## FRANK TRAINOR ET AL. *v.* FRANK MERCEDE AND SONS, INC., ET AL.

KING, C. J., MURPHY, ALCORN, SHANNON and LEIPNER, Js.

Argued October 15—decided December 15, 1964

*Morgan P. Ames,* with whom was *Duncan C. Smith,* for the appellants-appellees (plaintiffs).

*Philip R. Shiff,* with whom, on the brief, was *Alan H. W. Shiff,* for the appellee (named defendant).

*Francis A. Smith, Jr.,* with whom was *William B. Rush,* for the appellants (defendants Gibor et al.).

ALCORN, J. The defendants Mayer Gibor and Arthur Smith engaged the defendant Frank Mercede and Sons, Inc., a general contractor, hereinafter called Mercede, to construct a building on land owned by Gibor and Smith. The plans were drawn by an architect employed by Gibor and Smith to

meet the requirements of First National Stores, which was to occupy the building as lessee. The plans called for, and Mercede constructed, an opening in the main floor, near the front door, to accommodate a conveyor to carry stock between the main floor and the basement. Before the conveyor was installed, and before the building was formally accepted by Gibor and Smith, employees of First National Stores were at work in the building in preparation for its occupancy. On July 27, 1959, Frank Trainor was hired by a foreman of First National Stores to work in the building. Trainor reported for work and was assigned the task of moving cartons and containers on the main floor. One of the cartons was lying over the opening, which was otherwise uncovered and the presence of which was unknown to him. In attempting to lift this carton, he stepped forward into the hole, fell to the basement and was injured.

Trainor brought this action against the defendants, Gibor, Smith and Mercede, to recover damages for his injuries, and, in a trial to the jury, the court directed a verdict in favor of Gibor and Smith and the jury rendered a verdict for Trainor against Mercede. Mercede moved to set aside the verdict recovered by Trainor, and Trainor moved to set aside the verdict directed in favor of Gibor and Smith. The court granted both motions on the ground that it had committed harmful error in its charge, and it ordered a new trial. Trainor has appealed from the action of the court in setting aside the verdict in his favor against Mercede, and Gibor and Smith have appealed from the setting aside of the directed verdict in their favor. Practice Book § 600.

The inherent power of a trial court to set aside

a verdict because of palpable and harmful error in its charge to the jury is well settled. *Munson* v. *Atwood,* 108 Conn. 285, 288, 142 A. 737; *Libero* v. *Lumbermens Mutual Casualty Co.,* 143 Conn. 269, 273, 121 A.2d 622; Maltbie, Conn. App. Proc. § 198. The court concluded that it had committed harmful error in charging that, since Mercede was an independent contractor and had not fully completed the construction of the building for the owners, Gibor and Smith, it must therefore, as a matter of law, be held to be in control of the premises and liable for any negligence which was the cause of Trainor's fall and resulting injuries. This conclusion prompted both the directed verdict in favor of Gibor and Smith and the instructions furnished to guide the jury in the verdict rendered against Mercede.

The trial court also expressed the opinion that the charge was erroneous in defining Trainor's status on the premises in relation to the independent contractor, Mercede, and the owners, Gibor and Smith, and in defining proximate cause as it applied to the liability of Mercede. The element of control, however, is conclusive of both appeals, and we therefore devote our attention to that issue.

It is apparent from a reading of the pertinent portions of the charge that the court treated an admitted paragraph of the complaint as controlling. Trainor had alleged, in substance, that, at the time of his fall, Mercede was a general contractor engaged in constructing the building for Gibor and Smith, and this allegation was admitted by all defendants. The court read this paragraph to the jury and told them that Mercede's admission of it was conclusive. Then, after telling the jury that they must first determine who had control and pos-

session of the premises at the time of Trainor's fall, the court said: "I therefore instruct you, ladies and gentlemen, that where the owner of premises employs an independent contractor to perform work upon them, and in our case Mercede and Sons was an independent contractor, the contractor and not the owner is liable for any losses resulting from negligence in the performance of the work until such time as it has been completed, turned over and accepted by the owner, either formally or by conduct. While there is evidence before you that from time to time Smith and Gibor and their architect Winston inspected the progress of the building, there is nothing before you to indicate that by their conduct the building was accepted earlier than sometime after the date of the plaintiff's fall. Therefore, as this case has gone in and from the evidence and pleadings before you, I instruct you that on July 27, 1959, the premises in question were in possession of and under the control of Mercede & Sons." Having told the jury that Gibor and Smith "are now out of this case", the court then discussed the legal duty owed by Mercede to Trainor, directed a verdict for Gibor and Smith, and left for the jury's determination only the issues between Mercede and Trainor.

While the principle invoked by the court in charging the jury is well settled, nevertheless its basic premise is that, under the circumstances stated in it, the assumption and exercise of control over the offending area or instrumentality is deemed to be in the independent contractor. *Mann* v. *Leake & Nelson Co.*, 132 Conn. 251, 255, 43 A.2d 461; *Calkins* v. *Liggett Drug Co.*, 124 Conn. 14, 18, 197 A. 693. The rule is intended to go no further than to impose liability on the independent contractor under cir-

cumstances which would normally and reasonably indicate that he is the person actually in control. It amounts to no more than an application of the fundamental proposition that one who is in actual possession and control of the portion of premises where an injury occurs is chargeable regardless of any flaw in his right of possession and control. *Ziulkowski* v. *Kolodziej,* 119 Conn. 230, 233, 175 A. 780; *Hayes* v. *New Britain Gas Light Co.,* 121 Conn. 356, 360, 185 A. 170. Thus, evidence indicating an actual assumption and exercise of control of the area or instrumentality from which an injury has resulted retains its full significance. Where that evidence is such that the mind of a fair and reasonable man could reach but one conclusion as to the identity of the person exercising control, the question is one for the court, but, if honest and reasonable men could fairly reach different conclusions on the question, then the issue should properly go to the jury for determination. *Johnson* v. *Pulidy,* 116 Conn. 443, 445, 165 A. 355.

From the claims of proof in the finding, to which we must turn in order to test the accuracy of the charge; *Munson* v. *Atwood,* 108 Conn. 285, 289, 142 A. 737; *Allard* v. *Hartford,* 151 Conn. 284, 291, 197 A.2d 69; *Royal Homes, Inc.* v. *Dalene Hardwood Flooring Co.,* 151 Conn. 463, 464, 199 A.2d 698; there was evidence from which the following facts, in addition to those already recited, could have been found. The contract between Mercede and Gibor and Smith obligated Mercede to cooperate with First National Stores, which had the right to have its employees enter the building during construction to instal equipment and furnishings. First National's employees had been so engaged for some weeks prior to Trainor's fall on July 27, 1959. It

was Mercede's duty to take safety measures and erect safeguards for the protection of workmen and other persons on or about the premises and to post warnings of hazards created by such construction features as "well holes". On July 27, 1959, Mercede had completed its work on the building except for minor adjustments, although Gibor and Smith did not formally accept it until about a month later. About a week before Trainor fell, Mercede delivered its keys to the building to First National Stores. After completing the work on the opening in the floor, Mercede had installed a plywood cover over it and never thereafter removed it. Both on and before July 27, 1959, however, employees of First National Stores removed the cover in order to use the opening to pass materials into the basement. On the morning of July 27, 1959, the opening in the floor was protected by the plywood cover, but during the day the cover was removed and a cardboard carton was placed over the opening in the floor by an employee of First National Stores. No employee of Mercede was working in the building on that day, and Mercede neither caused nor permitted the opening in the floor to be uncovered, nor did it have the opening under its control.

The court granted Gibor and Smith's motion for a directed verdict at the close of Trainor's case. The appendix shows that, prior to that time, evidence had been offered from which the jury could have found, in addition to the facts already recited from the finding, that the opening in the floor had been enlarged upon the direction of Gibor and Smith; that the opening was large enough for a man to fall through and was dangerous; that Gibor and Smith had visited the premises frequently and knew the hole was protected only by an unfastened, movable, plywood

cover; that in their contract with Mercede, Gibor and Smith reserved the right to use any part of the building when it was "sufficiently complete" and obligated the contractor to permit the prospective lessee to instal equipment before the completion of the building; and that on the day the plaintiff fell the building was substantially completed, Mercede's employees were not on the job, and the prospective lease was not yet in effect.

Upon this evidence, it was a question for the jury whether Gibor and Smith exercised control; *Bates* v. *Connecticut Power Co.*, 130 Conn. 256, 261, 33 A.2d 342; what the legal relationship of the prospective lessee and its employees was to them; *Laube* v. *Stevenson*, 137 Conn. 469, 473, 78 A.2d 693; and whether Gibor and Smith were negligent in failing to exercise such care as was required of them. *Bonczkiewicz* v. *Merberg Wrecking Corporation*, 148 Conn. 573, 580, 172 A.2d 917; *Reboni* v. *Case Bros., Inc.*, 137 Conn. 501, 507, 78 A.2d 887; *Millstone Corporation* v. *Laurel Oil Co.*, 131 Conn. 636, 639, 41 A.2d 711; *Campus* v. *McElligott*, 122 Conn. 14, 17, 187 A. 29; *Newell* v. *K. & D. Jewelry Co.*, 119 Conn. 332, 334, 176 A. 405; *Lawrence* v. *Shipman*, 39 Conn. 586, 590.

Thus, the question who was actually exercising possession and control over the opening through which Trainor fell was clearly one for the determination of the jury. The court's action in directing a verdict for Gibor and Smith obviated the necessity for the court to discuss, and it did not discuss, the effect, if any, to be accorded First National Stores' position as prospective lessee, the contractual obligation to which Gibor and Smith had committed Mercede to cooperate with the lessee in permitting access to the building to instal equipment

preparatory to occupancy, the receipt of the keys by the lessee and its subsequent actions in the building, all as bearing on any liability to be imposed on Gibor and Smith. Consequently, we consider it unnecessary to discuss these elements. On the record the issue is whether Mercede was, as a matter of law, in control of the portion of the premises where the fall occurred, as the court charged that it was. We are not called upon to decide who, if anyone else, might be found to be in control. How the jury might have decided the issue had it been submitted to them under proper instructions cannot be known. However unfortunate it is that the litigants and the state should be burdened with added expense, nevertheless essential justice required the court to set aside both the directed verdict and the verdict in Trainor's favor and to order a new trial.

There is no error.

In this opinion the other judges concurred.